IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BASKIN-ROBBINS FRANCHISING LLC, a Delaware Limited Liability Company, BASKIN ROBBINS FRANCHISED SHOPS LLC, a Delaware Limited Liability Company, and BR IP HOLDER LLC, a Delaware Limited Liability Company, | ) ) ) ) ) ) ) ) ) | CV. NO. 10-00758 DAE-BMK |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| DEAN MORRIS, individually, and PARADISE ENDEAVORS, LLC, a Hawaii Limited Liability Company, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFFS' VERIFIED MOTION
FOR  PARTIAL DEFAULT JUDGMENT, PERMANENT INJUNCTION,
<u>AND DECLARATORY JUDGMENT</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motion and the supporting

memorandum, the Court **GRANTS** Plaintiffs' Verified Motion for (1) Partial

Default Judgment; (2) Permanent Injunction; and (3) Declaratory Judgment (Doc.

# 8).

<u>BACKGROUND</u>

The instant action arises from a dispute between Plaintiffs, Baskin-Robbins Franchising LLC, Baskin Robbins Franchised Shops LLC, and BR IP Holder LLC (collectively "Plaintiffs"), franchisors and owners of the Baskin-Robbins brands, and Defendant Paradise Endeavors, LLC ("Paradise"), a defaulting corporate franchisee as well as its individual guarantor, Defendant Dean Morris ("Morris").

Plaintiffs allege that on November 21, 2005, they entered into a franchise agreement with Paradise, which was subsequently modified by another franchise agreement on March 10, 2009 (collectively "Franchise Agreements"). ("Compl.," Doc. # 1, ¶ 9.)  The Franchise Agreements established two franchise locations, both in Kihei, Hawaii.  (<u>Id.</u>)  The first franchise, store number 362235, is located at 1280 S. Kihei Road, Kihei, HI 96753.  (<u>Id.</u>)  The second, store number 344851, is located at 2395 Kihei Road, Kihei, HI 96753.  (<u>Id.</u>)  Morris allegedly exercised personal guarantees of all franchisee obligations, including monetary and post-termination obligations, under the Franchise Agreements.  (<u>Id.</u> ¶ 10.)

Plaintiffs allege that under the Franchise Agreements, Paradise was obligated to pay for the account of Plaintiffs various amounts, including but not limited to the purchase of goods, items and supplies, a monthly franchise fee,

monthly contributions for local advertising, and any insufficient funds and service charges, late charges and attorney fees incurred.  (Id. ¶ 25.)

Sometime before August 2010, Paradise breached the obligations established by the Franchise Agreements.  (See id. ¶ 25–26.)  On or about August 16, 2010, in accordance with the Franchise Agreements, Plaintiffs delivered letter notices to cure defaults to Paradise and Morris by overnight courier delivery, stating that they were in breach of the Franchise Agreements due to failure to pay unreported and/or unpaid franchise fees, advertising fees, supply charges, service charges, attorney fees, and late charges.  (Id. ¶ 26.)  Plaintiffs allege that Paradise was in default on both Franchise Agreements in an amount believed to be no less than $51,599.28, all of which was incurred between 2009 and July 2010.  (Id. ¶ 27.)  According to Plaintiffs, neither Paradise nor Morris have paid this amount. (Id. ¶ 28.)

Plaintiffs claim that on September 17, 2010, they delivered to Paradise and Morris notices of termination of both franchises.  (Id. ¶ 29.)  In these letters Plaintiffs demanded "de-identification" and other post-termination procedures pursuant to the Franchise Agreements.  (Id.)  After termination, Plaintiffs claim that Paradise continued to display protected words such as "BASKIN-ROBBINS," "Baskin-Robbins Ice Cream," and "31 flavors."  (Id. ¶ 37.)  Paradise has allegedly

continued to reproduce these words "on and/or outside the respective premises, or on Defendants' menus, table displays, menu boards, business cards and business receipts," all allegedly in violation of Plaintiffs' respective registered trademark and service mark numbers. (Id.)

On December 21, 2010, Plaintiffs filed their Complaint. Plaintiff alleges the following seven causes of action:

- First: breach of franchise agreement (Id. ¶¶ 24–33);

- Second: trademark infringement (Id. ¶¶ 34–43);

- Third: unfair competition, unfair trade practices and false designation of origin (Id. ¶¶ 44–47);

- Fourth: dilution (Id. ¶¶ 48–51);

- Fifth: injunctive relief (Id. ¶¶ 52-54);

- Sixth: specific performance (Id. ¶¶ 55–62);

- Seven: declaratory relief (Id. ¶¶ 63–65.)

On January 18, 2011, Paradise was served with the complaint and summons through its registered agent CSC Services of Hawaii, Inc. ("CSC"). (See Doc. # 9.) Paradise did not file an answer or otherwise appear and defend within the period of time set forth in Federal Rule of Civil Procedure ("Rule") 12(a). On April 20, 2011, Plaintiff requested that the Clerk of Court enter default judgment

against Paradise.  (See Doc. # 10.)  The same day the Clerk so entered judgment. (See Doc. # 10-2.)

On April 22, 2011, Plaintiffs filed the instant Motion.  ("Mot.," Doc. # 10.)  Plaintiff seeks: (1) entry of Partial Default Judgment as to Paradise; (2) a permanent injunction which restrains Paradise, its agents, representatives and employees from further infringing upon Plaintiffs' proprietary marks, and preventing Plaintiffs from lawfully entering the infringing stores to de-identify the stores of all remaining proprietary marks and trade dress; and (3) declaratory relief declaring Defendant's two franchises lawfully terminated.

### STANDARD OF REVIEW

Default may be entered by the clerk if the defendant has "failed to plead or otherwise defend" within the permitted time.  Fed. R. Civ. P. 55(a).  Under Rule 55(b)(1), the Clerk of the Court may enter default judgment for the plaintiff if the defendant has defaulted by failing to appear and plaintiff's claim is for a "sum certain or for a sum which can by computation be made certain[.]"  Fed. R. Civ. P. 55(b)(1).  In all other cases, the plaintiff must apply to the court for default judgment.  Fed. R. Civ. P. 55(b)(2).

The grant or denial of a motion for the entry of default judgment is within the discretion of the court. Haw. Carpenters' Trust Funds v. Stone, 794 F.2d 508, 511–12 (9th Cir. 1986). However, default judgments are ordinarily disfavored, and cases should be decided upon their merits wherever reasonably possible. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). Thus, entry of default does not entitle the non-defaulting party to a default judgment as a matter of right. Valley Oak Credit Union v. Villegas, 132 B.R. 742, 746 (9th Cir. 1991).

The Ninth Circuit has indicated that a court should consider the following factors in exercising its discretion as to the entry of a default judgment:

(1) the possibility of prejudice to the plaintiff;

(2) the merits of the plaintiff's substantive claim;

(3) the sufficiency of the complaint;

(4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts;

(6) whether the default was due to excusable neglect; and

(7) the strong policy underlying the FRCP favoring decisions on the merits.

Eitel, 782 F.2d at 1471–72.

Upon default, the general rule of law is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)). Under this standard, the well-pled allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which she is entitled. Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Furthermore, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).

DISCUSSION

I.    Preliminary Matters

The Court must address two preliminary matters before reaching merits of whether Plaintiffs are entitled to the relief it seeks in the instant Motion.

First, the documentation which Plaintiffs have provided to the Court suggests that Paradise has been administratively dissolved. (See Doc. # 12.) Despite this, the Court finds that Plaintiffs effectively served Paradise by delivering a copy of the Complaint to its registered agent CSC on January 18,

2011.  (See Doc. # 9.)  Two Hawaii statutes provisions plainly establish that

administrative dissolution does not affect the propriety of serving a dissolved

corporation's registered agent for the purposes of litigation.  Hawaii Revised

Statute ("HRS") 414-402 provides, inter alia,

> Procedure for and effect of administrative dissolution and effect of expiration . . .
>
> (c) A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs . . .
>
> (d) The administrative dissolution of a corporation does not terminate the authority of its registered agent.

Haw. Rev. Stat. § 414-402.  HRS § 414-385(b)(5)–(7) provides:

> Effect of dissolution . . .
>
> (b) Dissolution of a corporation does not: . . .
>
> (5) Prevent commencement of a proceeding by or against the corporation in its corporate name;
>
> (6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
>
> (7) Terminate the authority of the registered agent of the corporation.

Haw. Rev. Stat. § 414-385(b)(5)–(7).

These statutes make clear that CSC remains an authorized agent to receive service on Paradise's behalf notwithstanding its administrative dissolution. They also establish that Paradise's dissolution does not prohibit, prevent, suspend or abate Plaintiffs' ability to bring this lawsuit against Paradise.

Next, Plaintiffs have stated that instant Motion was not served upon Paradise. Pursuant to Rules 5 and 55(b)(2), however, Plaintiffs were not required to serve the instant Motion. Indeed, "notice [of a 55(b)(2) motion] is only required where the party has made an appearance." In re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993); see also Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served . . . ." (emphasis added)). Rule 5 provides that "[n]o service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2).

The record is clear: Paradise has made no appearance in these proceedings. In fact, the Clerk of Court has already found Paradise in default for failing to appear. (See Doc. # 10-2.) Plaintiffs were therefore under no obligation to serve any papers, including the instant Motion, on Paradise.

II.     Entitlement to Relief

Plaintiffs seek Partial Default Judgment against Paradise on all seven counts of the Complaint, including in particular Counts V and VII, Injunctive Relief and Declaratory Relief respectively.  (Mot. at 8.)  The Court finds that Plaintiffs are entitled to the relief they seek.

A.     Factual Predicate

Along with their Motion, Plaintiffs have submitted documentation which establishes the following.

Plaintiffs are the valid owners of proprietary trade and service marks for the Baskin-Robbins franchise system.  Their proprietary trademarks, service marks, logos, emblems, and other indicia of origin are registered in the United States Patent and Trademark Office with federal registration numbers.[1]  ("Zullig Decl.," Doc. # 8-1, ¶¶ 3–5.)  When Paradise opened two franchises in Plaintiffs'

---

[1] These numbers include but are not limited to the following: BASKIN-ROBBINS, Registration No. 1185045, dated January 5, 1982; BASKIN 31 (IN ARC) ROBBINS, Registration No.1783116, dated July 20, 1993; 31, Registration No. 0796902, dated September 28, 1965; 31 In a Circle Design, Registration No. 0710670, dated January 31, 1961; 31 in a Circle Design, Registration No. 1228930, dated March 1,1983; 31 in an Arc Design, Registration No. 1761925, dated March 30, 1993; 31 Flavors, Trademark, Registration No. 1227721, dated February 15, 1983; 31 Baskin Robbins, Registration No. 2282002, dated September 28, 1999; Dots Design, Registration No. 1807776, dated November 30, 1993; and Dots Design, Registration No. 1835784, dated May 10, 1994 .

franchise system, its right to use Plaintiffs' proprietary marks was explicitly conditioned upon its full compliance with the Franchise Agreements. (See Docs. ## 8-3, 8-4.)

Paradise substantially and materially breached each Franchise Agreement with Plaintiffs by failing to pay amounts due Plaintiffs for product, supplies and fees, among other costs. (See Docs. ## 8-4, 8-5 (accounts receivable ledgers for each franchise); Zullig Decl. ¶ 9.) Plaintiffs subsequently provided Paradise the opportunity to cure their deficiencies via letter delivered both to Paradise and Morris on August 16, 2010. (Doc. # 8-7.) Receiving no response from either Paradise or Morris, Plaintiffs sent Paradise and Morris written notices that the Franchise Agreement for each store was terminated on September 17, 2010. (Docs. ## 8-8 (termination notices), 8-11 (proof of delivery of notice to terminate).) Once terminated, the Franchise Agreements required Paradise to cease doing business under Plaintiffs' proprietary marks upon receipt of the notices of termination. (See Docs. ## 8-3, 8-4.)

Of the two franchises operated by Paradise, Plaintiffs provide evidence that as late as November 24, 2010, one of them, store number 344851, continued to operate under the guise of being a legitimate Baskin-Robbins

franchise.[2]  (See Doc. # 8-9.)  Specifically, Plaintiffs hired a private investigator to determine whether Paradise had complied with its termination notices.  The investigator discovered that Baskin-Robbins remained prominently displayed as one of the shopping center's tenants.  (Id. at 2.)  Exterior store signs all indicated that a Baskin-Robbins store was within, including a large "BR logo" above the doorway and smaller ones on both entrance doors.  (Id.)  Posters on the wall within the store all had Baskin-Robbins logos, as did the display cups which demonstrate the various available portion sizes.  (Id. at 3.)  Indeed, patrons were able to order ice cream which was sold in a Baskin-Robbins pint-sized containers.  (Id. at 5.)  Plaintiffs have provided photographs to the Court from this franchise location which substantiates the investigator's claims.  (Id. at 7–8.)  From all outward appearances, the evidence submitted by Plaintiffs suggest that the store appeared to be a normally functioning and operating Baskin-Robbins franchise.  (Zullig Decl. ¶¶ 13–16.)  As of February 2011, unauthorized sales appeared to have stopped at store number 344851 but "the existing signage and other branded material continue to identify an abandoned store as belonging to the Baskin-Robbins franchise system."  (Id. ¶ 20.)

---

[2] The other franchise location, however, bore no resemblance to a Baskin-Robbins franchise when visited on November 24, 2010.  (See Doc. # 8-10.)

The evidence therefore shows that Paradise engaged in unauthorized post-termination product sales associated with Plaintiffs' proprietary marks. Moreover, by failing to remove Plaintiffs' proprietary marks after abandoning the store, Paradise also violated its contractual duty to "de-identify" the store upon termination without undue delay.  (See Docs. ## 8-3, 8-4.)

The Franchise Agreements explicitly acknowledged that in case of violations of the agreements, Plaintiffs would be entitled to injunctive relief without posting a bond.  The first Franchise Agreement provides:

> Because of the importance of your compliance with Standards to protect our System, other franchisees, and the goodwill enjoyed by our Proprietary Marks, you agree that the remedies described elsewhere in this Agreement, as well as monetary damages or termination at a future date, may be insufficient remedy for a breach of our Standards.  <u>Accordingly, you agree not to contest the appropriateness of injunctive relief for such breaches, and consent to the grant of an injunction in such cases without the showing of actual damages, irreparable harm or the lack of an adequate remedy at law</u> . . . .

(Doc. # 8-3, § 14.5.)  The second Franchise Agreement provides similarly:

> FRANCHISEE agrees that its failure to comply with the terms of this Agreement would cause irreparable damage to FRANCHISOR and the System(s) as a whole for which no adequate remedy at law may be available, including, without limitation, violation fo standards . . . unauthorized use of the Proprietary Marks and breaches . . . .  In the event of FRANCHISEE's breach or threatened breach of any of the terms of this Agreement, FRANCHISOR shall therefore be forthwith entitled to an injunction restraining such breach

13

> and/or to a decree of specific performance, without showing or proving any actual damage or irreparable harm or lack of an adequate remedy at law, and <u>without the requriement for the posting of bond</u>, the same being hereby waived by FRANCHISEE, until a final determination is made by a court of competent jurisdiction.

(Doc. # 8-4, § 9.6.)  Accordingly Paradise has plainly waived any bond posting requirement for injunctive relief.

B.    <u>The Eitel Factors</u>

A review of the <u>Eitel</u> Factors makes clear that Plaintiffs in the instant case are entitled to the relief they seek in their Motion.

1.    <u>Possibility of Prejudice to Plaintiffs</u>

There is little doubt that the possibility of prejudice to the Plaintiffs remains great.  Paradise's conduct as outlined above has illustrated a pattern of non-compliance with the Franchise Agreements.  Paradise has yet to pay nearly $60,000 dollars owed to Plaintiffs.  (<u>See</u> Docs. ## 8-4, 8-5 (accounts receivable ledgers for each franchise); Zullig Decl. ¶ 9.)  Paradise continued to use Plaintiffs' proprietary marks even after receiving Plaintiffs' notice of termination.  (<u>See</u> Doc. # 8-9.)  When Paradise did finally abandon their illicit Baskin-Robbins franchise, they did not "de-identify" the store as required by the Franchise Agreements. (Zullig Decl. ¶ 20.)  Time and again, Paradise has shown a willingness to ignore its Franchise Agreement obligations.  Although Paradise has been administratively

dissolved, the Court finds that Paradise's history of disregarding legal obligations and restraints leads to the conclusion that Paradise may eventually resume abusing Plaintiffs' proprietary marks.  Moreover, notwithstanding its dissolution, Paradise remains in breach of the Franchise Agreements as it has yet to "de-identify" one of its franchise locations.  The Court therefore finds that there is a great possibility of prejudice to Plaintiffs.

2.      Merit's of Plaintiffs' Substantive Claim

Plaintiffs' claims against Paradise plainly have merit.  Plaintiffs have provided documentation which establish that Plaintiffs and Paradise entered into a Franchisor-Franchisee relationship.  Paradise opened two Baskin-Robbins franchises in Kihei, Hawaii.  The evidence establishes that Paradise was soon in breach of those Franchise Agreements and that Plaintiffs provided Paradise written notification of the breach and the opportunity to cure.  After waiting a reasonable time, Plaintiffs terminated the franchise relationship with Paradise.  Plaintiffs have provided evidence which demonstrates that notwithstanding the termination, Paradise continued to sell ice cream under the auspices of being a legitimate Baskin-Robbins franchise and while using Plaintiffs' proprietary marks.  Moreover, even when Paradise finally abandoned the franchise location, it did not

"de-identify" the store as required by the Franchise Agreements.  Plaintiffs' claims, in sum, have merit.

3.    The Sufficiency of the Complaint

Plaintiffs' legal claims are sufficient.  Plaintiffs allege the following seven causes of action in their Complaint:

- First: breach of franchise agreement (Compl. ¶¶ 24–33);

- Second: trademark infringement (Id. ¶¶ 34–43);

- Third: unfair competition, unfair trade practices and false designation of origin (Id. ¶¶ 44–47);

- Fourth: dilution (Id. ¶¶ 48–51);

- Fifth: injunctive relief (Id. ¶¶ 52-54);

- Sixth: specific performance (Id. ¶¶ 55–62);

- Seven: declaratory relief (Id. ¶¶ 63–65.)

With respect to the first cause of action, to prove a breach of contract claim Plaintiffs must establish that a contract exists, and that Defendants failed to preform as required by the contract.  See Stanford Carr Development Corp. v. Unity House, Inc., 141 P.3d 459, 476 (Haw. 2006). The facts as outlined supra easily establish a cause of action for breach of the Franchise Agreements.

As to the second cause of action, trademark infringement, the Court finds the Complaint sufficient as well. "To show trademark infringement, [a plaintiff] 'must demonstrate that it owns a valid mark, and thus a protectable interest,' and it must show that [a defendant's] 'use of the mark is likely to cause confusion, or to cause mistake, or to deceive.'" Lahoti v. VeriCheck, Inc., 546 F.3d 1190, 1198 (9th Cir. 2009) (quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9rth Cir. 2005)). As outlined, Plaintiffs have sufficiently alleged (and established) that it owns valid trademarks and that Paradise used the marks in a way likely to cause confusion, mistake, or with the intent to deceive, specifically when Paradise continued to operate under the auspices of being a legitimate Baskin-Robbins franchise after the franchise relationship was properly terminated by Plaintiffs.

Plaintiffs have also sufficiently alleged their third and fourth causes of action for unfair competition, unfair trade practices, false designation of origin, and dilution. "Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C.(a)(1)(B), explicitly furnishes a private right of action against persons who make false and deceptive statements in a commercial advertisement about their product." PhotoMedez, Inc. v. Irwin, 601 F.3d 919, 923 (9th Cir. 2010) (citations, modifications, and internal quotation marks omitted). "Under the Lanham Act, a prima facie case requires a

showing that . . . the defendant made false statements either about the plaintiff's or its own product." Id.; see also 15 U.S.C. 1125(a)(1)(B). Plaintiffs here have sufficiently alleged facts which give rise to these claims. Paradise received notice that their franchise relationship was terminated, but continued to sell Baskin-Robbins ice cream as though it owned and operated a legitimate Baskin-Robbins franchise, thereby making false statements about its own products.[3]

The final three enumerated causes of action are actually requests for relief from the Court. Specific performance is an equitable remedy which may be awarded once a court has established a breach of contract has occurred. See Ueoka v. Szymanski, 114 P.3d 892, 899 (Haw. 2005). As discussed, Plaintiffs have plainly established that a breach of contract has occurred and has thus sufficiently demonstrated to the Court that it is entitled to a decree of specific performance to ensure compliance with the Franchise Agreements.

In the context of trademark infringement, injunctive relief is governed by 15 U.S.C. § 1116, which provides

---

[3] Plaintiffs have similarly stated a cause of action under Hawaii's Unfair Competition Statutes located at Chapters 480, 481A, 482 and 482B of the Hawaii Revised Statutes.

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title.

15 U.S.C. § 1116. "The likelihood of confusion to consumers is the critical factor in . . . consideration of . . . the injunction [under this section]. The public has an interest in avoiding confusion between two companies' products." Internet Specialties West, Inc. v. Milon Di-Giorgio Enters., 559 F.3d 985, 993 n.5 (9th Cir. 2009); Perfumebay.com Inc. v. eBay, Inc., 506 F.2d 1165, 1176–77 (9th Cir. 2007). As discussed, Plaintiffs have already established sufficient facts which demonstrate violations of 15 U.S.C. 1125(a)(1)(B). Moreover, the likelihood of confusion between Plaintiffs' and Paradise's products is almost guaranteed given that Paradise has sold its products as though a legitimate Baskin-Robbins franchise. Indeed, the Court finds that Paradise's history of disregarding legal obligations and restraints leads to the conclusion that Paradise may eventually resume abusing Plaintiffs' proprietary marks. Finally, these violations are ongoing as Paradise has not "de-identified" store number 344851 as required in the Franchise Agreement. Plaintiffs have therefore demonstrated they are entitled to injunctive relief.

Finally, the Court finds Plaintiffs' request for declaratory relief appropriate. The Declaratory Judgments Act provides, <u>inter alia</u>, that "any court of the United States . . . <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." <u>MedImmune, Inc. v. Genentech</u>, 549 U.S. 118, 136 (2006) (quoting <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995)). Indeed, it is a well-accepted principle that "the decision whether to exercise jurisdiction over a declaratory action lies in the sound discretion of the district court." <u>Huth v. Hartford Ins. Co. of the Midwest</u>, 298 F.3d 800, 803 (9th Cir. 2002). Given the facts described <u>supra</u> and Paradise's repeated failure to respond to any correspondence from Plaintiffs, the Court finds that Plaintiffs' request for a declaration from this Court that the Franchise Agreements are terminated is appropriate.

### 4.   The Amount of Money at Stake

The total amount of money at stake in the instant litigation is not entirely clear, though it seems to be at least $51,000 dollars. A default judgment generally is disfavored if there is a large sum of money involved. See <u>Eitel</u>, 782 F.2d at 1472 (denying motion for default in part due to amount sought, which

totaled almost $3 million in damages). The amount at issue here is small in comparison to $3 million involved in Eitel. Moreover, it is plain from the Motion and the Complaint that Plaintiffs are more concerned with the injunctive and declaratory relief discussed above, which is not monetary in nature. The Court therefore finds this factor therefore weighs in favor of entering default judgment in favor of the Plaintiffs against Paradise.

5.    The Possibility of Dispute Concerning Material Facts

There is nothing on the record to which suggests there could be a dispute of material facts as presented by Plaintiffs. It cannot seriously be disputed that Paradise owed Plaintiffs at least $51,000 dollars for failing to pay in accordance with the Franchise Agreements given the evidence Plaintiffs have provided to the Court. Nor can it be disputed that Plaintiffs thereafter terminated Paradise's franchises in accordance with the Franchise Agreement. Paradise also could not seriously dispute that it continued to sell ice cream at one of its franchise locations after Plaintiffs' termination notice—not only did Plaintiffs provide a report which provides first-hand knowledge of the sale of ice cream from store number 344851 which appeared to be a legitimate Baskin-Robins franchise, but it also included pictures which substantiated the report. In sum, if Paradise had appeared in this lawsuit, it would not have been able to effectively dispute the

material facts presented to the Court by Plaintiffs.  This factor therefore also weighs in favor of Plaintiffs.

      6.      <u>Whether Default was Due to Excusable Neglect</u>

There is no evidence in the record that Paradise's failure to answer the Complaint or otherwise plead was due to excusable neglect.  Paradise was served via its registered agent, CSC.  When no answer was filed, default was entered by the Clerk of Court.  To date, Paradise has not appeared and explained why it defaulted.  The Court cannot conclude this factor weighs against entering judgment in Plaintiffs' favor.

      7.      <u>Policy Favoring Decisions on the Merits</u>

Although the Court recognizes the strong policy favoring resolution of cases on their merits, proceeding with the instant case against Paradise would be futile given Paradise's failure to answer or otherwise plead in this case, despite being served.  It is clear Paradise has no intention of defending this matter, so failing to enter default judgment based on public policy would unduly prejudice Plaintiffs.

In sum, each of the <u>Eitel</u> factors weigh in favor of an entry of default judgment in favor of Plaintiffs and granting Plaintiffs the relief they seek.

III.    Form of Relief

In the instant Motion, Plaintiffs request three forms of relief: (1) Entry of final judgment against Paradise; (2) A declaration from this Court that Paradise's two franchises are lawfully terminated; and (3) Injunctive relief prohibiting Paradise from continuing to use Plaintiffs' proprietary marks as well as prohibiting Paradise from refusing to let Plaintiffs enter the franchise premises and remove its proprietary marks.

For the reasons discussed <u>supra</u>, the Court finds Plaintiffs are entitled to the relief they request.  The Court, however, is mindful of the fact that Paradise has not appeared in these proceedings and has not had the opportunity to present argument or evidence to contest Plaintiffs' assertions.  The Court therefore will allow Paradise ten (10) days from the filing of this Order to appear and contest Plaintiffs' assertions and move the Court to vacate this Order.  If Paradise does not appear within that time period, Plaintiffs shall receive the relief they seek.

Therefore, absent an appearance by Paradise within ten days of the filing of this Order, the Court **GRANTS** Plaintiffs' request for Partial Default Judgment as to Paradise and **GRANTS** Plaintiffs' request for a declaration finding Paradise's two franchises lawfully terminated.  Plaintiffs request that the Court grant the requested injunctive relief in a separate document which can be posted at

the store locations.  The Court has therefore attached to this Order an exhibit which grants the injunctive relief Plaintiffs request.[4]

CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Verified Motion for (1) Partial Default Judgment; (2) Permanent Injunction; and (3) Declaratory Judgment (Doc. # 8).  The Clerk of Court is directed to enter default judgment as against Paradise ten (10) days after the filing of this Order, but may not yet close the case as there has been no resolution of any issue with respect to Defendant Morris.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 23, 2011.



_____
David Alan Ezra
United States District Judge

Baskin-Robbins Franchising LLC, et. al. v. Morris, et. al., CV No. 10-00758 DAE-BMK;
ORDER GRANTING PLAINTIFFS' VERIFIED MOTION FOR  PARTIAL DEFAULT
JUDGMENT, PERMANENT INJUNCTION, AND DECLARATORY JUDGMENT

---

[4] The Court notes, however, the injunctive relief granted in the attachment is not identical to the proposed injunctive relief Plaintiffs' sought.  Specifically, the injunction states that it is not effective until ten days after the filing of this Order and that Plaintiffs will be liable for any and all damages to the premises or its fixtures occasioned by the removal of Plaintiffs' proprietary marks.